588 So.2d 145 (1991)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Rueben PACE, et ux.
No. 91-CA-0355.
Court of Appeal of Louisiana, Fourth Circuit.
October 15, 1991.
*146 Robert L. Ledoux, Special Asst. to Gen. Counsel, State of Louisiana, Dept. of Transp. and Development, Baton Rouge, for plaintiff-appellant.
Stanley McDermott, Jr., Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendants-appellees.
Before SCHOTT, C.J., and LOBRANO and WILLIAMS, JJ.
SCHOTT, Chief Judge.
In this highway expropriation case the state has appealed from an award to the landowners in the amount of $44,000. The issue is whether the evidence is sufficient to support an award for damages resulting from denial of access to the business on the property.
This highway project involved the construction of a new bridge over the Industrial Canal at the Chef Menteur Highway in New Orleans. The defendants operated an automobile service business on the Highway near the bridge. In March, 1983 the state expropriated a strip of land containing about 1,100 square feet from the front of the property, depositing in the court's registry $11,717 in compensation. In April, 1987 defendants answered the petition alleging that the project was nearing completion and claiming an additional sum for losses resulting from denial of access to their place of business. After a jury trial at which the defendants represented themselves, they were awarded a judgment for $44,000 less the amount deposited. The state has appealed.
The state's principal argument is that the defendant's failed to carry their burden of proving losses resulting from interference with access to their business. Defendants argue that the jury verdict should be affirmed because it is not clearly wrong.
In an expropriation case the defendant has the burden of proving his claim to a legal certainty and by a reasonable preponderance of the evidence; speculation, conjecture, mere possibility and even unsupported probability are not sufficient to support a judgment. R.S. 48:453; State Dept. of Trans. & Dev. v. Estate of Clark, 432 So.2d 405, 408 (La.App. 1st Cir.1983) citing State v. Levy, 242 La. 259, 136 So.2d 35, 43 (1961). If a public authority substantially interferes with the owner's right of access, he has a constitutional right to just compensation for his loss; but where access is not substantially impaired or is impaired only on a temporary basis and/or the inconvenience to the owner is not peculiar to him, but general to the public at large, no recovery is allowed. Dept. of Trans. & Dev. v. Traina, 537 So.2d 792, 795 (La.App. 2nd Cir.1989), writ denied, 540 So.2d 332. In the application of these *147 principles to the evidence presented we conclude that the jury verdict is clearly wrong.
Defendants testified they started their business in 1977. It was primarily a quick automobile tune-up, oil change, and lubrication outlet and was the first of the kind in the area. The construction work interfered with public access to their business and reduced available parking space. They produced records showing average profits of $46,387 from the business for 1980-82; $19,422 profit in 1983; $13,939 in 1984; $1,787 in 1985; and losses of $12,863 and $19,888 in 1986 and 1987. Their accountant testified their profits averaged $51,081 for 1980-82.
The supervisor of the project testified from his records of the job that some work was done on January 29, 1985, May 22-24, 1985, May 27, 1985, and September 12, 1985; but excavation did not begin until December 6, 1985 and was completed on February 21, 1986. He stated that the work was done in such a way as to allow one of the two driveways into defendants' business open at all times.
The state's real estate expert testified that the value of the property taken was $16,698. He studied defendants' claim for business losses, and, after an economic analysis of the figures they presented and a neighborhood assessment he concluded that they suffered no such loss from the project. He based this conclusion on the defendants' records showing their gross revenues declining each year from a high in 1980; Mr. Pace's statement to him that his total number of customer services had dropped by fifty percent already in 1985; the impact of the economic recession in New Orleans; and the fact that by 1985 there were forty-two direct competitors in defendants' immediate neighborhood.
The state also produced as a witness Dr. Morris Pardue, an economist. He made an analysis of defendants' business and concluded it was never profitable because no salaries for the defendants were included in the expenses, and revenues began declining after 1980 which was three years before the taking of defendants' property and five years before construction started. From 1980 the number of transactions was declining and revenues were decreasing even though defendants' prices were increasing. He concluded that the business was not adversely affected by the construction and its problems were the result of stiff competition in a soft economy.
Defendants' entire case is based on their conclusion that their declining revenues and profits must have been the result of the construction project. They offered no expert or other testimony to support this conclusion. Their accountant would not express an opinion as to why their business declined.
On the other hand, defendants' own figures showed that their profits had declined from a high of $50,556 in 1982 to $13,939 in 1984 even though no work started until 1985. In that year their profit was only $1,787 even though very little work was done on the project until December. When these figures are considered, the conclusion of the state's experts that defendants' troubles were not caused by the project is valid.
We have concluded that defendants failed to carry their burden of proving losses caused by denial of access to their property or of proving that there was a "substantial impairment of access". They offered no evidence to prove they were affected by the project unlike any one else in the area. Consequently, the jury verdict is clearly wrong.
Accordingly, the judgment is affirmed, but amended to reduce the award to $16,698 subject to a credit of $11,717 with legal interest from April 28, 1987 until paid and for all costs of these proceedings except the costs of this appeal which are taxed against defendants.
AMENDED AND AFFIRMED.